1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10

11   RESILIENT FLOOR COVERING    )
     PENSION FUND, et al.,        )
12                               )         No. C08-5561 BZ
             Plaintiff(s),        )
13                               )         **ORDER ON MOTIONS FOR
         v.                       )         ATTORNEYS' FEES AND MOTION
14                               )         TO AMEND JUDGMENT**
     M&M INSTALLATION, INC., et   )
15   al,                          )
                                  )
16           Defendant(s).        )
     ─────────────────────────────)
17

18        Before the court are two motions for attorneys' fees, one

19   submitted by Plaintiffs and the other by Defendants, as well

20   as Defendants' motion to amend the judgment.  For the reasons

21   set forth below, Defendants' motions are **DENIED** and

22   Plaintiffs' motion is **GRANTED IN PART**.

23        **Defendants' Motion for Attorneys' Fees**

24        Defendants move for attorneys' fees under 29 U.S.C.

25   section 1451(e).[1]  That section commits the award of

26   ────────────────────

27        [1]    This section reads: "In any action under this
     section, the court may award all or a portion of the costs and
     expenses incurred in connection with such action, including
28   reasonable attorney's fees, to the prevailing party."

                                 1

1   attorneys' fees and costs to the discretion of the court.[2]

2   The Ninth Circuit has set forth five factors to guide the

3   district court's exercise of discretion:  (1) the degree of

4   the opposing parties' culpability or bad faith; (2) the

5   ability of the opposing parties to satisfy an award of fees;

6   (3) whether an award of fees against the opposing parties

7   would deter others from acting under similar circumstances;

8   (4) whether the parties requesting fees sought to benefit all

9   participants and beneficiaries of an ERISA plan or to resolve

10  a significant legal question regarding ERISA; and (5) the

11  relative merits of the parties' positions.  Hummell v. S. E.

12  Rykoff & Co., 634 F.2d 446, 453 (9th Cir. 1980); see also

13  Cuyamaca Meats, Inc. v. San Diego & Imperial Counties

14  Butchers' & Food Employers' Pension Trust Fund, 827 F.2d 491,

15  500 (9th Cir. 1987).

16       Considering these factors, I decline to award Defendants'

17  attorneys' fees in this case.  I cannot say that Plaintiffs

18  acted culpably or that their positions must have appeared

19  meritless to them or to their counsel when viewed

20  prospectively rather than with the benefit of hindsight.  As I

21  pointed out in my order on the parties' cross-motions for

22  summary judgment, the Ninth Circuit invited Plaintiffs, and

23  _____

24       [2]    Awarding fees under this section is mandatory where a
    plan brings a successful action to collect unpaid employer
    withdrawal liabilities.  Under ERISA, the award of attorneys'
25  fees to a pension plan is mandatory in all actions to collect
    delinquent contributions. 29 U.S.C. § 1132(g)(2).  The Ninth
26  Circuit has held that this mandatory attorneys' fees provision
    applies in all actions to collect delinquent contributions owed
27  under section 1145, including actions to collect unpaid
    employer withdrawal liabilities.  Lads Trucking Co. v. Board of
28  Trustees, 777 F.2d 1371, 1374 (9th Cir. 1985).

2

1  "encouraged" me, to address the issues of veil piercing and to

2  determine whether Simas Floor was liable to Plaintiffs under

3  section 1392(c) of the MPPAA for engaging in a transaction, a

4  principal purpose of which was to "evade or avoid" withdrawal

5  liability.  (See Docket No. 124.)  I cannot therefore say that

6  Plaintiffs pursued these claims in bad faith.  Moreover,

7  Defendants' contention that there was "not a shred of evidence

8  to support a veil piercing claim," is not true.  Plaintiffs

9  strongly argued that M & M was undercapitalized, a factor

10 which often supports piercing a corporate veil.  Defendants

11 did not prevail on this issues; I merely concluded that there

12 were disputed issues of fact that could not be resolved on

13 summary judgment.  It was not unreasonable for Plaintiffs to

14 pursue a veil piercing claim based on the alleged

15 undercapitalization of M & M by its parent company, whose

16 shareholders were identical.

17      In addition, Plaintiffs' counsel has submitted a

18 declaration stating that the Pension Fund has been certified

19 as "in critical status" by its actuary since March 2010.

20 I am therefore not persuaded that Plaintiffs could satisfy an

21 award of attorneys' fees.  Finally, the issue related to a

22 benefit for all plan beneficiaries, a factor that favors

23 Plaintiffs.

24      Moreover, even if some Hummell factors favored

25 Defendants, Defendants would still not be entitled to

26 attorneys' fees because no judgment has been entered in their

27 favor as a "prevailing party" under section 1451.  Defendants

28 argue that since Plaintiffs lost on their veil piercing claim

3

1    against the individual Defendants, judgment should be entered

2    in their favor and they should be entitled to fees as the

3    prevailing party.  I disagree.  Plaintiffs won the ultimate

4    issue, which is to compel the payment of the withdrawal

5    liability, and are therefore the prevailing party.  See Lads

6    Trucking, 777 F.2d at 1375 ("[Pension Trust Fund] is the

7    prevailing party; it won the ultimate issue; that it did not

8    prevail on each and every sub-issue is not grounds for a

9    piecemeal fees award.").  Accordingly, Defendants' motion for

10   attorneys' fees and their corresponding motion to amend the

11   judgment are **DENIED**.

12        **Plaintiffs' Motion for Attorneys' Fees & Costs**

13        Where a plan successfully brings an action to collect

14   unpaid employer withdrawal liabilities, an award of reasonable

15   attorney's fees and costs is mandatory.[3]  Lads Trucking, 777

16   at 1373-75.  Plaintiffs sought and received a judgment for the

17   full amount of withdrawal liability owed by Defendants, and

18   are therefore entitled to reasonable attorneys' fees.

19        "The most useful starting point for determining the

20   amount of a reasonable fee is the number of hours reasonably

21   expended on the litigation multiplied by a reasonable hourly

22

23        [3]   Neither Plaintiffs nor Defendants address the
     mandatory nature of attorneys' fees in withdrawal liability
     actions where the plan is successful.  In light of the
24   mandatory nature of an award of attorneys' fees in withdrawal
     liability actions, I will not address the factors set forth in
25   Cuyamaca Meats, 827 F.2d at 500, as the parties have done.  See
     also Operating Engineers' Pension Trust Fund v. Clark's Welding
26   & Mach., Case No. 09-0044, 2010 U.S. Dist. LEXIS 50676, 2010 WL
     1729475, at *5 (N.D. Cal. Apr. 27, 2010) ("When the Court
27   awards withdrawal liability, an award of reasonable attorneys'
     fees is mandatory.")

28

4

1  rate." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). "The

2  district court should also exclude from this initial fee

3  calculation hours that were not 'reasonably expended'" such as

4  "fee request hours that are excessive, redundant, or otherwise

5  unnecessary. . . ." Id. at 434. As recently emphasized by

6  the Supreme Court:

7         [T]rial courts need not, and indeed should not,
       become green-eyeshade accountants. The essential
8         goal in shifting fees (to either party) is to do
       rough justice, not to achieve auditing perfection.
9         So trial courts may take into account their overall
       sense of a suit, and may use estimates in
10        calculating and allocating an attorney's time.

11 Fox v. Vice, 131 S. Ct. 2205, 2216 (2011).

12        With respect to the hourly rates sought by Plaintiffs, I

13 find that, with the exception noted below, the rates are

14 reasonable. Plaintiffs request $250 per hour for attorney

15 time and $150 per hour for paralegal time. Plaintiffs

16 submitted evidence showing that these attorney rates are in

17 line with those prevailing in the marketplace. See, e.g.,

18 Clark's Welding & Mach., 2010 U.S. Dist. LEXIS 50676, 2010 WL

19 1729475 at *15-16 (attorney rates of $185 per hour and $255

20 per hour and paralegals at $110 per hour found reasonable in

21 withdrawal liability action); Board of Trustees of the

22 Boilermaker Vacation Trust v. Skelly, Inc., 389 F. Supp. 2d

23 1222, 1227-28 (N.D. Cal. 2005) (attorney rates of $210 per

24 hour and $345 per hour found reasonable in delinquent

25 contribution action). Defendants do not dispute the attorney

26 hourly rates sought by Plaintiffs, but they do dispute the

27 reasonableness of the paralegal hourly rates, arguing that an

28 hourly rate of $115 is more in line with community standards.

1   (Def.'s Opp. Br. at 13.)  I agree with Defendants that an

2   hourly rate of $150 is on the higher end of the spectrum for

3   paralegal rates in this district.  See, e.g., Dist. Council 16

4   N. Cal. Health & Welfare Trust Fund v. Alvarado, Case No.

5   09-02552, 2011 U.S. Dist. LEXIS 39133, 2011 WL 1361572, at

6   *16-17 (N.D. Cal. Apr. 11, 2011) (awarding $110 and $115

7   hourly rates for paralegals in action for unpaid

8   contributions); Carpenters Pension Trust Fund for N. Cal. v.

9   Lindquist, Case No. 10-3386, 2011 U.S. Dist. LEXIS 111731,

10  2011 WL 4543079 (N.D. Cal. Sept. 29, 2011) (same).  There is

11  support for awarding paralegals an hourly rate as high as

12  $150, particularly where evidence is submitted that the

13  paralegal is performing tasks akin to those of an attorney

14  (see, for example, White v. Coblentz, Patch, Duffy & Bass LLP

15  Long Term Disability Ins. Plan, 2011 U.S. Dist. LEXIS 125657,

16  2011 WL 5183854 (N.D. Cal. Oct. 31, 2011) and the cases cited

17  therein), but Plaintiffs have submitted virtually no evidence

18  to demonstrate that the paralegals who performed work in this

19  action should be billed out at rates on the higher end of the

20  spectrum.  The only information provided about the two

21  paralegals who worked on this matter are their names and how

22  long they have worked at Plaintiffs' counsels' law group.

23  (See Corrected Declaration of Katherine McDonough ("McDonough

24  Decl.") at ¶ 1.)  Without additional information regarding the

25  types of tasks performed, the paralegals' experience,

26  training, and previous rates billed and received, I am not

27  inclined to award such a high rate.  I therefore reduce the

28  requested rate to $125 per hour.  Otherwise, I find the

6

1 | requested rates are reasonable.

2 |     Regarding the number of hours billed, Plaintiffs' counsel

3 | have submitted billing records demonstrating that they spent

4 | 927.70 hours litigating this case.[4]  These hours comprise time

5 | spent litigating this action before and after the appeal.

6 | (McDonough Decl. ¶¶ 6-8.)  Plaintiffs have provided an

7 | itemized accounting of the number of hours spent on each task

8 | performed by counsel for which they request reimbursement.

9 | (Id.)  Defendants argue that Plaintiffs should not be

10 | permitted to recover fees for work performed in the pre-appeal

11 | phase of this action because Plaintiffs previously requested,

12 | and were denied, those fees on account of failing to comply

13 | with the meet and confer requirements of the Local Rules.

14 | (See Docket No. 54.)  Defendants argue that since Plaintiffs

15 | did not appeal the order denying their fees, they have waived

16 | the right to recover those fees.  I agree with Defendants that

17 | Plaintiffs have waived their right to recover fees and costs

18 | for the pre-appeal phase of this action.  If Plaintiffs were

19 | entitled to recover those fees it would permit them to revive

20 | their original motion for attorneys' fees despite the fact it

21 | was denied on account of their failure to comply with the

22 | relevant Local Rules.  Had Defendants not appealed the

23 | original summary judgment order, Plaintiffs would have never

24 | been given the opportunity to seek to collect these fees

25 | (unless they had appealed the denial, which they did not do),

26

27 |     [4]     This figure incorporates a voluntary reduction of 32 hours for worked performed on the second motion for summary judgment related to Plaintiffs' unsuccessful claim for veil

28 | piercing.

1   and it is only by virtue of the action having been remanded

2   that Plaintiffs are now able to even attempt to collect these

3   fees.  It is too much of a bootstrap to permit a party who

4   waived a right to fees and did not appeal from that ruling to

5   use an adverse ruling on the merits of an appeal to revive its

6   right to fees.  Accordingly, I find that Plaintiffs are not

7   entitled to recover fees or costs for work performed during

8   the pre-appeal phase of this action.

9       That leaves 256.10 hours of potentially reimbursable

10   time.[5]  Of this amount, Plaintiffs seek 204 hours for time

11   spent both drafting and preparing for oral argument on the

12   second summary judgment motion.[6]  Defendants argue that the

13   time spent on the second summary judgment motion is excessive

14   given that Plaintiffs' attorneys had already researched and

15   briefed a number of the issues in the parties' motions.

16

17      [5]    This number is derived from Plaintiffs' billing
records, attached as Exhibit 1 to the McDonough Declaration.
18 The first time entry in these records for the post-appeal phase
of this action is on 1/26/2011.  This order uses that billing
19 entry as the starting point for determining the total number of
post-appeal hours.
20
     [6]    In their first motion for summary judgment,
21 Plaintiffs sought reimbursement for 176.69 billable hours
related to work performed on the cross-motions for summary
22 judgment.  (Docket No. 50.)  Plaintiffs now seek reimbursement
for a total of 373.50 billable hours for work performed
23 relating to both rounds of the cross-motions for summary
judgment.  The difference between these two figures, rounded to
24 the nearest hundredth, is 196.80.  In their reply brief,
however, Plaintiffs' counsel claim to have worked 213.50 hours
25 on the second round of summary judgment.  This inconsistency is
not addressed by Plaintiffs.  I reviewed the billing records
26 and added the hours from each time entry reflecting work
performed on the second round of summary judgment briefing,
27 which came to 204 hours.  Given the inconsistencies in the
briefs, I have chosen to use the 204 hour figure that is
28 supported by the billing records.

1    Defendants also highlight the similarity in the statements of

2    facts between Plaintiffs' first summary judgment motion and

3    their second motion, pointing out that the statement of facts

4    comprised 11 of the 33 pages in the brief.  Plaintiffs'

5    counsel asserts that the second summary judgment brief

6    contained "expanded and revised" facts that shed light on the

7    history of Simas Floor and how M & M was formed, and also

8    included additional research on the alter ego doctrine.

9        That there is overlap in the legal research and briefing

10   does not mean that the time spent in research and re-drafting

11   was entirely unnecessary or duplicative.  This litigation has

12   extended over many years, and it is not unreasonable for

13   Plaintiffs' counsel to spend time conducting legal research to

14   ensure that Plaintiffs' arguments were consistent with the

15   present status of the law.  See Moreno v. City of Sacramento,

16   534 F.3d 1106, 1112 (9th Cir. 2008) ("When a case goes on for

17   many years, a lot of legal work product will grow stale; a

18   competent lawyer won't rely entirely on last year's, or even

19   last month's, research: Cases are decided; statutes are

20   enacted; regulations are promulgated and amended. A lawyer

21   also needs to get up to speed with the research previously

22   performed. All this is duplication, of course, but it's

23   *necessary* duplication; it is inherent in the process of

24   litigating over time.") (emphasis in original).  This case

25   also presented some novel issues regarding the alter ego

26   doctrine, which made the legal analysis inherently more

27   complex, particularly given that there was little authority

28   applying the alter ego doctrine to a factual scenario similar

1  to the one presented in this dispute.  Indeed, a great deal of

2  the analysis turned on the historical application of this

3  doctrine in the context of traditional labor disputes, not

4  under the MPPAA.

5      Nevertheless, 204 hours – which amounts to approximately

6  5 full-time workweeks – is on the higher end of what I would

7  expect Plaintiffs' counsel to spend on the summary judgment

8  motion presented in this action, particularly since some of

9  the issues had already gone through one round of briefing.  It

10  is somewhat difficult to tell from the billing records what

11  precisely consumed so much of Plaintiffs' counsels' time, as

12  many of the records simply state "prepare Summary Judgment

13  Motion" or "further Prepare Summary Judgment Motion."  Since

14  204 hours is on the higher end of the time that I would have

15  expected counsel to spend on this motion, and in light of the

16  vagueness of the billing records, I find that a moderate

17  reduction in the number of hours sought is warranted.  I will

18  therefore reduce the hours requested for work relating to the

19  second round of summary judgment by ten percent, for a total

20  of 183.6 hours.[7]

21      Finally, Defendants argue that Plaintiffs should not be

22  entitled to recover time spent on the July 2011 settlement

23  conference because, in addition to being unreasonable and

24  excessive, Plaintiffs misrepresented their willingness to

25  settle their claims, which resulted in the settlement

26

27      [7]     Based on the billing records, this will amount to
   37.44 reimbursable paralegal hours and 146.16 reimbursable
28  attorney hours.

1 conference being an "utter waste of time." (Def.'s Opp. Br.

2 at p.13.) I have reviewed Plaintiffs' billing entries related

3 to the July 2011 settlement and am not convinced that

4 Plaintiffs' hours are excessive. I therefore decline to

5 reduce these hours, particularly in light of the high

6 incentive placed on encouraging parties to meaningfully engage

7 in settlement discussions.[8]

8        Plaintiffs have also submitted billing records showing

9 that in the post-appeal phase of this action they incurred

10 $113.25 in costs for delivering pleadings and other documents

11 to the court. (McDonough Decl. at ¶ 10, Exhs. 2-3.)

12 Plaintiffs are entitled to recover these delivery costs as

13 part of their reasonable attorneys' fees. <u>Trustees of the</u>

14 <u>Construction Industry and Laborers Health and Welfare Trust v.</u>

15 <u>Redland Ins. Co.</u>, 460 F.3d 1253, 1257 (9th Cir. 2006).

16 Plaintiffs also seek to recover costs relating to computerized

17 legal research. In this circuit, reasonable charges for

18 computerized research may be recovered if separate billing for

19 such expenses is "the prevailing practice in the local

20 community." <u>Trs. of the Constr. Indus. & Laborers Health &</u>

21 <u>Welfare Trust v. Redland Ins. Co.</u>, 460 F.3d 1253, 1258-59 (9th

22 Cir. 2006). Based on the evidence submitted by Plaintiffs,

23 and the challenges to that evidence raised by Defendants, I

24 find that Plaintiffs have failed to meet their burden to show

25 that the recovery of computerized legal research costs is the

26

27        [8]    I also agree with Plaintiffs' counsel that it is not
proper for me to delve into the details of what happened during
28 the settlement conference under the Local ADR Rules.

11

1  prevailing practice in this district.  While Ms. McDonough's

2  declaration states that "[i]t is the prevailing practice in

3  the Bay Area to bill computerized research charges to the

4  client," no foundation is provided for this conclusory

5  assertion. (McDonough Decl. at ¶ 11.)  Defendants provided

6  evidence – unchallenged by Plaintiffs – that it is in fact not

7  the prevailing practice in this district to charge clients for

8  computerized legal research, and that most firms pay a flat

9  monthly rate for these services in lieu of charging clients

10  separately on a "per search basis."  (Declaration of Stephen

11  Davenport at ¶¶ 4-6.)  Ms. McDonough states that the legal

12  research costs incurred in this case were hourly charges that

13  were in fact billed to the Pension Fund.  (Declaration of

14  Katherine McDonough in Support of Reply at ¶ 19.)  While this

15  may be the practice of Plaintiffs' counsels' firm, Plaintiffs

16  failed to counter Defendants' evidence that this is not "the

17  prevailing practice" of firms in this district. I therefore

18  decline to award Plaintiffs these costs.

19      **Conclusion**

20      For the reasons set forth above, **IT IS SO ORDERED** that

21  Plaintiffs are awarded $53,900.00.  This sum comprises 195.5

22  attorney hours at a rate of $250 ($48,875) and 40.2 paralegal

23  hours at a rate of $125 ($5,025).  Plaintiffs are also awarded

24  $113.25 in costs.

25  Dated: May 16, 2012

26  _____
        Bernard Zimmerman
        United States Magistrate Judge

27

28  G:\BZALL\-BZCASES\RESILIENT FLOOR COVERING PENSION\ORDER ON SECOND MOT FOR
    ATTYS FEES v.3.wpd

12